UNITED STATES of America,
Plaintiff–Appellee,

v.

Jimmie JONES, Defendant–Appellant.

No. 93–2164.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 26, 1994.

Decided April 5, 1994.

**166**

Frances C. Hulin, U.S. Atty., Rodger Heaton (argued), Danville, IL, for plaintiff-appellee.

Shari Goggin–Ward (argued), Landau, Omahana & Kopka, Lisle, IL, for defendant-appellant.

Before ESCHBACH, RIPPLE and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

Defendant Jimmie Jones was convicted by a jury of conspiracy to possess cocaine and heroin with intent to distribute, distribution of heroin, attempt to possess cocaine with intent to distribute, possession of heroin with intent to distribute, as well as firearm, currency structuring, money laundering, and tax evasion offenses. The district court sentenced Mr. Jones to several concurrent terms of imprisonment, the longest of which is 360 months. Mr. Jones now appeals and asserts that evidence was introduced against him at trial in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that the district court erroneously refused to instruct the jury on the defense of entrapment. For the reasons that follow, we affirm the judgment of the district court except with respect to Mr. Jones' conviction for unlawful structuring of a currency transaction; we remand that conviction because of an instructional error. We also vacate the sentence and remand for resentencing.

## I

### BACKGROUND

A. *Facts*

On March 6, 1992, at approximately 9:10 p.m., Mr. Jones, government informant Walter Krushall, an employee of Mr. Jones named Robert Lipscomb, and undercover agent Bennie O'Neal, met in a motel room at a Day's Inn in Springfield, Illinois. The meeting, which was audiotaped and videotaped, was described by Agent O'Neal as a "reverse sting operation" in which Mr. Jones was to purchase two kilograms of cocaine from Agent O'Neal in exchange for six ounces of heroin and $8,000. Following the transaction, a uniformed police officer entered the motel room with a gun drawn, and ordered Lipscomb to empty his pockets onto the bed. The officers seized the $8,000. Sergeant Steven Fermon of the Illinois State Police met Mr. Jones as Mr. Jones was leaving the motel room. Approximately five to seven other officers were also present. Sgt. Fermon, using what he described as a "friendly" tone of voice, told Mr. Jones that he wanted to speak with him. Sgt. Fermon testified that Mr. Jones said "all right" and "agreed to come." Mr. Jones was not allowed to go back to his van at any time outside the motel room.

Mr. Jones left the motel with Agent Dennis Stark and Inspector Chuck Jones, both from the Illinois State Police, in Agent Stark's squad car. Agent Stark testified at the pretrial suppression hearing that when he told Mr. Jones that he would like to transport Mr. Jones to police headquarters, Mr. Jones responded "okay" and that "he understood." Both Agent Stark and Mr. Jones testified that Agent Stark told Mr. Jones outside the motel room that he was not under arrest.[1] Mr. Jones was driven approximately four miles to the Zone 9 police headquarters at the Capitol City Airport. Mr. Jones was not handcuffed at any time during the evening. Following his departure from the Day's Inn in a police vehicle, Mr. Jones' van was driven by the officers to the Zone 9 headquarters.

At the Zone 9 headquarters, officers talked with Mr. Jones in a large room with approximately three or four desks. Agent Stark and Special Agent Calhoun, an investigator with the Internal Revenue Service, questioned Mr. Jones. At some point, Agent O'Neal also participated in the questioning. The door was closed but unlocked during the questioning. Although Mr. Jones was not offered a telephone call at any time, there is no evidence that he requested one. Agent Stark again informed Mr. Jones that he was not under arrest and not in custody. At some point, Agent Stark also informed Mr. Jones that he was free to leave.[2] During the questioning, Mr. Jones signed several forms in which he consented to a police search of various real properties he owned in Champaign and Urbana, Illinois. Mr. Jones also made incriminating statements concerning his involvement in selling heroin. Mr. Jones was not given *Miranda* warnings at any time on March 6 or 7, 1992.

The police officers searched the real properties in the early-morning hours of March 7 in Mr. Jones' presence. As a result of these searches, the officers obtained in Mr. Jones' residence a sixteen-ounce bottle of Mannitol, which can be used as a cutting agent for narcotics. They found in a warehouse owned by Mr. Jones 146 grams of heroin, a knife with heroin residue, an aerosol can with a false bottom, electronic and triple-beam scales, seven rifles, four shotguns, and a handgun. In his office they found a loaded Colt .45 caliber pistol. Following these searches, Agent Stark and another officer drove Mr. Jones back to his office in Champaign, Illinois. During this trip, Agent Stark testified that Mr. Jones said "that he couldn't understand why he was being treated so good."

---

1. Agent Stark testified at the hearing that he could not remember when he first told Mr. Jones that he was free to leave. The district court did not make a factual finding concerning this question.

2. The record contains no evidence concerning the length of the questioning.

## B. *Procedural Posture and Ruling of the District Court*

Mr. Jones was charged in a superseding indictment with (1) conspiracy to possess cocaine and heroin with intent to distribute, 21 U.S.C. §§ 846 and 841(a)(1); (2) distribution of heroin, 21 U.S.C. § 841(a)(1); (3) attempt to possess cocaine with intent to distribute, 21 U.S.C. § 841(a)(1); (4) possession of heroin with intent to distribute, 21 U.S.C. § 841(a)(1); (5) possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1); (6) unlawful possession of a firearm (two counts), 26 U.S.C. § 5861; (7) unlawful structuring of a currency transaction, 31 U.S.C. § 5324(3); (8) money laundering (eight counts), 18 U.S.C. § 1956(a)(1)(B)(i); and (9) tax evasion (two counts), 26 U.S.C. § 7201.

Mr. Jones filed a pretrial motion to suppress his statements of March 7, 1992, as well as all evidence seized as a result of signing the consent-to-search forms. The district court orally denied the motion after a hearing, and the statements and evidence subsequently were introduced at trial. The district court explained its rationale as follows:

> Well, I have sent my law clerks out to find that wonderful Seventh Circuit case involving the Lincoln Park pirates and the police. They haven't come back with it.... And Judge Cummings writes in the decision that the defendant was free to leave. And I love that case because if the defendant was free to leave, and a reasonable person would have thought he was free to leave under the circumstances of the case, there is no case where a person would think that they were not able to leave. I will come up with that in due course.
> The cases that follow *Oregon v. Mathiason*, turn on the question of whether a person would understand from what the police said and did that they were free to leave. And, of course, in this case Mr. Jones was caught red-handed in a drug transaction, committing a crime and even asked one of the police officers why are you treating me so nicely, which is some tip off as to the conditions under which he was questioned. The police didn't want to

arrest him. They told him he was not under arrest, that he was free to go.

> I have no reason to disbelieve the witness, Fermon, when he said if Jones had refused to answer him he would have turned him loose because it served the police interests not to arrest the defendants in this case at that time.
> It appears to me that the interrogation was not in custody as that term has come to be described in the reported cases. I am sorry. I can't give you that Seventh Circuit citation where Judge Cummings wrote the decision. I will get it in due course. So that since the questioning was not a custodial interrogation, many of the statements by Mr. Jones are not suppressable [sic] or will not be suppressed.

Tr. at 36–37.

The district court further found that Mr. Jones' consent to the police search of his real properties was voluntarily given under *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).[3] The district court, over Mr. Jones' objection, also refused to instruct the jury on the affirmative defense of entrapment. The jury found Mr. Jones guilty of all charges.

## II

## ANALYSIS

### A. *Lack of Miranda Warnings*

#### 1.

■ The proper appellate standard in this circuit to review whether a person was "in custody" under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is, in one respect, unclear. It is well-established that the district court's factual findings and credibility determinations are reviewed for clear error. *United States v. Fazio*, 914 F.2d 950, 955 (7th Cir.1990). We have stated, however, that although the "in custody" determination "tends to follow from various factual findings, the ultimate issue of whether there was a custodial interrogation is a mixed question of law and fact" subject to independent appellate review. *United*

---

**3.** Mr. Jones has not challenged this ruling on appeal.

*States v. Hocking,* 860 F.2d 769, 772 (7th Cir.1988); *see also Fazio,* 914 F.2d at 955. Later cases have questioned the continued viability of the approach set forth in *Hocking.* In *United States v. Levy,* 955 F.2d 1098, 1103–04 n. 5 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 102, 121 L.Ed.2d 62 (1992), a panel of this circuit, noting that this circuit has applied a deferential standard of review to other so-called mixed questions of law and fact, said that the precedential value of *Hocking*'s indication that *de novo* review is appropriate has been "vitiated." More recently, in *United States v. Kelly,* 991 F.2d 1308, 1311 (7th Cir.1993), another panel of this circuit wrote, in the context of a motion to suppress for non-compliance with *Miranda,* that "[w]e review a district court's factual and legal determinations on a motion to suppress for clear error." *Kelly* relied upon our decision in *United States v. Spears,* 965 F.2d 262 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 502, 121 L.Ed.2d 438 (1992). *Spears,* however, dealt with our review of a magistrate's probable cause determination, not with a determination of custody status under *Miranda.* Neither *Levy* nor *Kelly* was circulated to the entire court under Circuit Rule 40(f).[4] Therefore, the binding authority of their pronouncements with respect to the continued vitality of *Hocking* in this circuit is open to debate. Other circuit courts of appeals are divided as to whether *de novo* or clear error review is appropriate.[5]

This case hardly presents the appropriate occasion for the resolution of this issue. The government maintained at oral argument that the appropriate standard of review for the "in custody" determination is *de novo;* this position was not contested by Mr. Jones. Therefore, there is no dispute between the parties as to this issue. Nor do we believe that the issue is crucial to the resolution of the case before us.[6] As we noted above, this court always has recognized that deferential review is appropriate on matters of witness credibility, and this concern is a major factor in the matter before us. Although we are in no worse position than the district court to determine whether correct principles of law were applied, as the following discussion makes clear, no such error was committed in this case.

**2.**

In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court established "rules of police procedure applicable to 'custodial interrogation.'" *Oregon v. Mathiason,* 429 U.S. 492, 494, 97 S.Ct. 711, 713, 50 L.Ed.2d 714 (1977). These rules require that a defendant be given "a full and effective warning of his rights at the outset of the interrogation process." *Miranda,* 384 U.S. at 445, 86 S.Ct. at 1612. Custodial interrogation is "questioning initiated by law enforcement officers after a per-

---

**4.** Circuit Rule 40(f) states:

(f) *Rehearing Sua Sponte before Decision.* A proposed opinion approved by a panel of this court adopting a position which would overrule a prior decision of this court or create a conflict between or among circuits shall not be published unless it is first circulated among the active members of this court and a majority of them do not vote to rehear in banc the issue of whether the position should be adopted. In the discretion of the panel, a proposed opinion which would establish a new rule or procedure may be similarly circulated before it is issued. When the position is adopted by the panel after compliance with this procedure, the opinion, when published, shall contain a footnote worded, depending on the circumstances, in substance as follows:

This opinion has been circulated among all judges of this court in regular active service. (No judge favored, or, A majority did not favor) a rehearing in banc on the question of (e.g., overruling *Doe v. Roe.*)

**5.** *Compare United States v. Collins,* 972 F.2d 1385, 1406 (5th Cir.1992) (applying *de novo* review), *cert. denied,* —— U.S. ——, 113 S.Ct. 1812, 123 L.Ed.2d 444 (1993); *United States v. Kirsteins,* 906 F.2d 919, 923 (2d Cir.1990) (same); *United States v. Torkington,* 874 F.2d 1441, 1445 (11th Cir.1989) (same); *and United States v. Cooper,* 800 F.2d 412, 414–15 (4th Cir.1986) (same) *with United States v. Lanni,* 951 F.2d 440, 443 (1st Cir.1991) (applying clear error review); *United States v. Griffin,* 922 F.2d 1343, 1347–48 (8th Cir.1990) (same); *Cordoba v. Hanrahan,* 910 F.2d 691, 693 (10th Cir.) (same), *cert. denied,* 498 U.S. 1014, 111 S.Ct. 585, 112 L.Ed.2d 590 (1990); *and United States v. Poole,* 806 F.2d 853 (9th Cir.1986) (same).

**6.** *See United States v. Fazio,* 914 F.2d at 955 n. 5 (suggesting that, in most cases, the ultimate result is not dependent upon a precise delineation of the standard of review).

son has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444, 86 S.Ct. at 1612.

■ Because Mr. Jones was not placed under arrest prior to or during the questioning on March 6 and 7, 1992, the district court correctly recognized that the appropriate inquiry is whether, at the time of the questioning, Mr. Jones was subject to a " 'restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (quoting *Mathiason,* 429 U.S. at 495, 97 S.Ct. at 714). This inquiry is determined from the view of "how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty,* 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984). *Miranda* warnings are not required merely because the individual questioned by law enforcement officers is a suspect or is the focus of a criminal investigation. *Mathiason,* 429 U.S. at 495, 97 S.Ct. at 714. Further, the questioning of a suspect in a "coercive environment," in the absence of a formal arrest or a restraint on freedom, does not convert automatically a noncustodial situation into a custodial interrogation. *Id.; Hocking,* 860 F.2d at 773. "In determining whether the accused was subjected to custodial interrogation, a reviewing court should consider the totality of the circumstances. The accused's freedom to leave the scene and the purpose, place and length of interrogation are all relevant factors in making this determination." *Hocking,* 860 F.2d at 773 (citation omitted).

■ We believe that, when assessed in its totality and giving due regard to the credibility determinations of the district court, the record supports the conclusion that Mr.

Jones was not in custody at the time he made the statements in question. The confrontational nature of Mr. Jones' initial encounter with the officers does not, by itself, establish custody. *Mathiason,* 429 U.S. at 495, 97 S.Ct. at 714. Although Mr. Jones testified that a gun was displayed by an officer, this factor, although important in the overall assessment of the situation, is not outcome determinative. Mr. Jones was not handcuffed or otherwise physically restrained and was told that he was not under arrest. Under these circumstances, we cannot say that Mr. Jones was in custody outside the motel room.

■ An examination of the entire record, again with due regard for the credibility determinations of the district court, leads to the conclusion that Mr. Jones was not subjected to custodial interrogation after he consented to go to the police headquarters. At the headquarters, Mr. Jones was again informed that he was not under arrest, and that he was free to leave. There is no evidence that the officers made any threatening gestures or statements, or otherwise engaged in "strong arm tactics" justifying a belief by Mr. Jones that he was in custody. *See Hocking,* 860 F.2d at 773. Finally, Mr. Jones commented during the drive to his office, after the questioning and searches, that "he couldn't understand why he was being treated so good." As the district court noted, this latter statement "is some tip off as to the conditions under which he was questioned." Tr. at 37. On the basis of our study of the record, we must conclude that the district court committed no error in determining that Mr. Jones was not subjected to a custodial interrogation, and therefore his rights under *Miranda* were not violated.[7]

7. One aspect of the district court's analysis deserves particularly close scrutiny. The district court expressly stated that it found Sgt. Fermon's testimony, that "if Jones had refused to answer him he would have turned him loose because it served the police interests not to arrest the defendants in this case at that time," to be credible. Tr. at 37. The Supreme Court has held that "a policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time." *Berkemer v. McCarty,* 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984). We also note that the Su-

preme Court of the United States recently granted certiorari in *People v. Stansbury,* 4 Cal.4th 1017, 17 Cal.Rptr.2d 174, 846 P.2d 756 (1993), *cert. granted, Stansbury v. California,* — U.S. —, — — —, 114 S.Ct. 380, 380–81, 126 L.Ed.2d 330 (1993), on the following question: "May trial court determine that criminal defendant is not 'in custody' for purposes of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), on basis of police officers' subjective and undisclosed conclusions that they did not consider defendant 'suspect'?" *Stans-*

### B. District Court's Refusal to Give an Entrapment Instruction

The district court's refusal to instruct the jury on the defense of entrapment is reviewed *de novo*. *United States v. Santiago–Godinez*, 12 F.3d 722, 726 (7th Cir.1993); *United States v. Casanova*, 970 F.2d 371, 374 (7th Cir.1992). "As a prerequisite for presenting the defense of entrapment to the jury, the defendant must produce sufficient evidence upon which a rational jury could have inferred that he was entrapped into committing the crime charged." *Santiago–Godinez*, 12 F.3d at 727. A valid entrapment defense requires proof of two related elements: (1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant to engage in criminal conduct. *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988); *Santiago–Godinez*, 12 F.3d at 728. "For the defendant to raise the entrapment defense, he must produce sufficient evidence of both the government's inducement and his own lack of predisposition." *Santiago–Godinez*, 12 F.3d at 728. An entrapment defense is properly rejected "without an inquiry into government inducement" when there is sufficient evidence of predisposition. *Id.*

Predisposition is "the central element underlying the purpose of the doctrine of entrapment." *Id.* Predisposition "focuses upon whether the defendant was an 'unwary innocent' or, instead, an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime." *Mathews*, 485 U.S. at 63, 108 S.Ct. at 886 (citations omitted). The factors relevant to determining whether a defendant was predisposed to commit a crime are:

(1) the character or reputation of the defendant; (2) whether the suggestion of criminal activity was made by the government; (3) whether the defendant engaged in criminal activity for a profit; (4) whether the defendant expressed reluctance to commit the offense which was overcome by government persuasion; and (5) the nature of the inducement or persuasion applied by the government.

*Santiago–Godinez*, 12 F.3d at 728 (citations omitted); *United States v. Fusko*, 869 F.2d 1048, 1052 (7th Cir.1989). "Although none of these factors alone are determinative, the most significant factor is whether the defendant exhibited a reluctance to commit the offense that was overcome by government inducement." *Santiago–Godinez*, 12 F.3d at 728.

With respect to this fourth factor, the reluctance of the defendant to commit the crime, the videotape of the March 6, 1992, drug transaction clearly demonstrates Mr. Jones' enthusiasm for distributing heroin. Mr. Jones expressed no reluctance whatsoever to distributing heroin, and was clearly engaging in this activity in order to make a profit. At trial, several witnesses testified that they engaged in heroin transactions with and on behalf of Mr. Jones well before becoming government informants. Mr. Jones also had a prior conviction at the time of his criminal activities in this case for a state-law offense of possession with the intent to distribute a controlled substance. This prior conviction, although not totally determinative of Mr. Jones' character or reputation, nonetheless establishes that Mr. Jones "was a less than law-abiding citizen." *Id.* at 729.

When we turn to an examination of the evidence upon which Mr. Jones relies as indicating a lack of predisposition, we find nothing that, whether assessed alone or cumulatively, would support the giving of an

---

bury v. California, 62 U.S.L.W. 3342 (U.S. Nov. 9, 1993) (No. 93–5770).

Our examination of the entire record in this case convinces us that the district court did not rely independently on the subjective, uncommunicated intention of the officers not to place Mr. Jones in custody. First of all, the district court explicitly stated that the focus of the inquiry was the reasonable belief of Mr. Jones as to whether he was in custody at the time he made the statements. Second, when read in reference to the entire record, the district court's statements are best understood as a comment on the credibility of Sgt. Fermon who had justified the actions of the investigating officers in not taking Mr. Jones into custody by noting that the investigation was incomplete. We do not read *Berkemer* as precluding the district court from considering an explanation as to why the officers did not make an arrest in a situation that, absent special circumstances, would normally result in an arrest.

entrapment instruction. Mr. Jones points to testimony of Robert Schwieder, a state probation officer who was in charge of supervising Mr. Jones. He testified that, to the best of his knowledge, Mr. Jones complied with the terms of his intensive probation in 1990 and 1991, except for two curfew violations. This testimony does not support a claim of a lack of predisposition because Mr. Schwieder stated on cross-examination that he had no knowledge that Mr. Jones had sold heroin in 1990–1991, had attempted to purchase cocaine in 1992, and was in possession of firearms on March 7, 1992. Mr. Jones also relies on Agent Stark's trial testimony that two attempts to purchase heroin from Mr. Jones in 1991 by an informant failed. Mr. Jones' reliance on this testimony is also misplaced because "[i]t is well established in this circuit ... that the government's persistence in attempting to set up a drug transaction is not alone sufficient to carry the case beyond an ordinary opportunity." *Id.* . In addition, Mr. Jones relies on Agent O'Neal's trial testimony that, at one point during negotiations for the March 6, 1992 meeting, Mr. Jones stated that he wanted to meet Agent O'Neal regardless of whether any drugs would be involved. This isolated remark, which was made during extensive negotiations for the March 6, 1992 transaction, is insufficient to overcome Mr. Jones' expression on the videotape of clear and uninhibited enthusiasm for distributing heroin.

Mr. Jones also suggests that the substantial tax obligations he owed to the United States make particularly suspect the nature of the inducement applied by the government—the last factor identified in our cases as relevant to the issue of predisposition. This argument fails because "[w]hen ordinary profits of crime are incentive enough to commit crimes such a person is predisposed in the sense that he is ready and willing to commit the offense," and all that is lacking is the opportunity. *Id.* at 730. There is no evidence in the record that Mr. Jones' heroin transactions resulted in anything other than the "ordinary profits of crime."

Mr. Jones presented insufficient evidence at trial to entitle him to raise an entrapment defense with the jury. The district court did not err in refusing to instruct the jury on entrapment.

### C. *Unlawful Structuring of a Currency Transaction Conviction*

Mr. Jones was convicted of one count of unlawfully structuring a currency transaction for the purpose of evading the transaction reporting requirements of 31 U.S.C. § 5313, in violation of 31 U.S.C. § 5324(3) [8] and 18 U.S.C. § 2. In order to be subject to criminal prosecution for violating 31 U.S.C. § 5324(3), a person must "willfully" violate that statute. 31 U.S.C. § 5322(a). In *Ratzlaf v. United States,* —— U.S. ——, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994), the Supreme Court of the United States held that this willfulness requirement mandates that the government prove, and the jury be instructed, that a defendant acted with knowledge that the structuring he undertook was unlawful. *Ratzlaf,* —— U.S. at ——, 114 S.Ct. at 663. The Supreme Court's holding in *Ratzlaf* is the controlling interpretation of 31 U.S.C. § 5324(3) and must be given full retroactive effect to Mr. Jones' appeal. *Griffith v. Kentucky,* 479 U.S. 314, 322, 107 S.Ct. 708, 712–13, 93 L.Ed.2d 649 (1987).

The jury instruction with respect to the unlawful structuring charge, count 9 of the superseding indictment, did not instruct the jury that the government was required to prove that Mr. Jones acted with knowledge that the structuring he undertook was unlawful. Mr. Jones did not object to this instruction at trial.[9] Therefore, the sole source of our authority to review this erroneous jury instruction is Federal Rule of Criminal Pro-

---

8. 31 U.S.C. § 5324(3) was subsequently recodified by Congress as 31 U.S.C. § 5324(a)(3) without substantive change. For convenience, we refer to the codification which appears on Mr. Jones' judgment of conviction.

9. This failure to object is understandable because, prior to *Ratzlaf,* the instruction was correct under the law of this circuit. *See United States v. Jackson,* 983 F.2d 757, 767 (7th Cir. 1993) (holding that "a criminal violation of § 5324(3) may be established without proof that the defendant knew that structuring was unlawful").

cedure 52(b): "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Under Rule 52(b), we are required to correct a "plain forfeited error affecting substantial rights if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Olano,* — U.S. —, —, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993) (citation omitted).[10]

The erroneous jury instruction is plain error which requires correction under the *Olano* standard. A "plain" error is "clear" or "obvious." *Id.* at —, 113 S.Ct. at 1777 (citation omitted). Here, the instruction was a clear and obvious error under *Ratzlaf.* The error, moreover, affected "substantial rights." The Supreme Court explained in *Olano* that, "in most cases," an error which affects substantial rights "must have been prejudicial: It must have affected the outcome of the District Court proceedings." *Id.* at —, 113 S.Ct. at 1778. This erroneous jury instruction clearly affected the outcome of the unlawful structuring charge because the government had presented no evidence at trial to establish this element of the offense. Finally, we believe that the erroneous jury instruction seriously affected the "fairness, integrity or public reputation" of the judicial proceedings. *Id.* at —, 113 S.Ct. at 1779. "The Court of Appeals should no doubt correct a plain forfeited error that causes the conviction or sentencing of an actually innocent defendant," although "[a]n error may 'seriously affect the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Id.* (citations omitted). In this case, because no evidence was presented at trial showing that Mr. Jones acted with knowledge that the structuring he undertook was unlawful, there is a clear possibility that Mr. Jones cannot be found guilty of the unlawful structuring charge.

Because we conclude that the erroneous jury instruction is plain error, we must reverse Mr. Jones' conviction for count 9 of the superseding indictment. The reversal of this conviction also requires vacation of the sentence. *United States v. Davenport,* 929 F.2d 1169, 1172 (7th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 871, 116 L.Ed.2d 776 (1992); *United States v. Boulahanis,* 677 F.2d 586, 591 (7th Cir.), *cert. denied,* 459 U.S. 1016, 103 S.Ct. 375, 74 L.Ed.2d 509 (1982).

### Conclusion

For the foregoing reasons, we affirm the judgment of conviction except with respect to Mr. Jones' conviction for count 9 of the superseding indictment. That conviction is reversed. The sentence is vacated. The case is remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, SENTENCE VACATED AND CASE REMANDED.

---

**10.** Mr. Jones' right to receive a proper jury instruction under *Ratzlaf* was a forfeited right under *Olano.* "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *Olano,* — U.S. at —, 113 S.Ct. at 1777 (citation omitted). Mr. Jones' right to receive a *Ratzlaf* instruction was not the "intentional relinquishment or abandonment of a known right" because *Ratzlaf* was decided after he was convicted in the district court. Rather, his right was merely forfeited since Mr. Jones failed to timely object to the instruction.