UNITED STATES of America, Plaintiff,

v. .

Lucia GONZALEZ–DELEON, Defendant.

No. DR 98–CR–203(1) WWJ.

United States District Court,
W.D.Texas,
Del Rio Division.

Dec. 28, 1998.

Stephanie Smith–Burris, Asst. U.S. Atty, Del Rio, TX, for plaintiff.

Molly Roth, Asst. Fed. Public Defender, Del Rio, TX, for defendant.

## ORDER

JUSTICE, Senior District Judge.

Defendant Lucia Gonzalez–DeLeon moves for suppression of statements obtained during an alleged custodial interrogation of her on March 17, 1998, at the Port of Entry in Eagle Pass, Texas. This court held a suppression hearing on this matter in Del Rio, Texas, on November 30, 1998, in which the government called three witnesses, Customs Inspector Albert Perez ("Perez"), Immigration Inspector Mario A. Garcia ("Garcia"), and Immigration Inspector Roberto Vidal ("Vidal"). Both parties to this criminal action have, at the court's direction, briefed the court on when *Miranda* protections should attach in the scenario before it.

■  Based on the Fifth Amendment prohibition against self-incrimination, the Supreme Court held in *Miranda* that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Miranda*'s protections attach prior to any "custodial interrogation." *U.S. v. Paul*, 142 F.3d 836, 843 (5th Cir. 1998). Therefore, the key issues now before the court are (1) whether defendant was in "custody" for *Miranda* purposes and (2) whether the defendant was being "interrogated" for *Miranda* purposes.

The United States Court of Appeals for the Fifth Circuit considers a person "in custody" for *Miranda* purposes when she is placed under formal arrest, or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest. *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983); *U.S. v. Gonzales*, 121 F.3d 928, 940 n. 6 (5th Cir.1997); *U.S. v. Garcia*, 77 F.3d 857, 859 (5th Cir.1996); *U.S. v. Bengivenga*, 845 F.2d 593 (5th Cir.1988). Other courts have considered other factors in determining whether a person is in custody.[1] Thus, determining when *Miranda*'s protec-

---

1. Other courts have considered the following factors in determining whether a person is in custody: whether and to what extent the person has been made aware that he is free to refrain from answering questions, see *U.S. v. Griffin*, 7 F.3d 1512, 1518 (10th Cir.1993), *cert. denied*, 515 U.S. 1168, 115 S.Ct. 2630, 132 L.Ed.2d 870 (1995); whether there has been prolonged, coercive, and accusatory questioning, or whether police have employed subterfuge in order to induce self-incrimination, see *U.S. v. Johnson*, 64 F.3d 1120, 1126 (8th Cir.1995), *cert. denied*, 516 U.S. 1139, 116 S.Ct. 971, 133 L.Ed.2d 891 (1996); *Griffin;*

the degree of police control over the environment in which the interrogation takes place, and in particular whether the suspect's freedom of movement is physically restrained or otherwise significantly curtailed, see *U.S. v. Smith*, 3 F.3d 1088, 1097–98 (7th Cir.1993), *cert. denied*, 510 U.S. 1061, 114 S.Ct. 733, 126 L.Ed.2d 696 (1994); and whether the suspect could reasonably believe that he has the right to interrupt prolonged questioning by leaving the scene, see *U.S. v. Jones*, 21 F.3d 165, 170 (7th Cir.1994); *U.S. v. Fazio*, 914 F.2d 950, 955–56 (7th Cir. 1990)

tions should attach is a fact-intensive undertaking.

■ The question of the defendant's "custody" in the situation at hand is a difficult determination. Upon careful consideration of the facts, however, it seems clear that a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement to the degree which the law associates with formal arrest. The government's witnesses testified that defendant Gonzalez's passport and visa were taken from her, and were not, at any time, returned to her. She was led away from the public through-way, to a windowless, video-taped interrogation room behind the counter. She was held and questioned there for several hours. She was, before hearing her *Miranda* rights, shackled at the ankles.

To pretend that defendant Gonzalez should have believed that she was free to leave at any moment after she was taken into the interrogation room not only defies credulity, but also ignores the Supreme Court's concerns in *Miranda* that the constitutionally mandated privilege against self-incrimination applies to all settings in which the Government seeks to compel a person to incriminate herself, including custodial interrogation by law enforcement officers.[2]

The fact-intensive nature of a determination of "custody" is illustrated by the majority decision in *U.S. v. Bengivenga*, 845 F.2d 593 (5th Cir.1988). In that case, a split *en banc* panel held that defendant Bengivenga was *not* in custody during a citizenship check when she was led from a bus into a trailer for questioning. The Fifth Circuit stressed not only the temporary nature of the detention, but also the fact that the bus driver was also in the trailer at all times. So, "a reasonable person in Bengivenga's position would have understood that so long as the bus driver remained in the trailer the bus would not depart and, if everything checked out she would shortly rejoin the other passengers on the bus." *Bengivenga* at 600. Unlike Bengi-

venga's situation, the defendant in the criminal action at hand had her passport and visa taken away, was led to a room designed for interrogation, and no non-officers were in the room. Furthermore, defendant Gonzalez was not experiencing a routine "citizenship stop," as was Bengivenga. Instead, defendant Gonzalez was a criminal suspect from the first moment of her interaction with authorities.

In that same decision, the Fifth Circuit held, in an assertion that can only called counterintuitive, that "law enforcement presence at a fixed checkpoint actually assuages the reasonable person's perception of restraint . . ." *Id.* at 599. Nevertheless, even accepting that proposition, it is determined that the "mitigating" influence of the "visible signs of authority," *id.* at 599, encountered by Gonzalez when she attempted to cross the border, are not sufficient to negate a reasonable person's determination that her detention constituted a restraint on freedom of movement to the degree which the law associates with formal arrest.

Both the Supreme Court, and subsequently the Fifth Circuit, have specifically stated that "referral of a person entering this country to a secondary inspector is part of the 'routine' border interrogation and does not, in and of itself, focus on the person so as to require a *Miranda* warning." *U.S. v. Henry*, 604 F.2d 908, 920 (1979); *U.S. v. Berisha*, 925 F.2d 791, 796 (5th Cir.1991). It is not, of course, removal to a secondary inspection point that, in and of itself, triggers the need for *Miranda* warnings. Such a referral, however, when in the context of an inspection officer's immediate suspicion of a suspect's illegal activity, does make referral to a secondary inspector more than merely "routine." Both Perez and Garcia testified that they immediately recognized Gonzalez's documents as counterfeit. Gonzalez, as a criminal suspect, was subjected to "custodial" questioning upon her removal from the pri-

---

2. Given the objective nature of the Fifth Circuit's test for "custody," subjective considerations, such as the facts that Gonzalez was relatively young, pregnant, and apparently ill at the time of the interrogation, have not been a part of this court's determination. Curiously, however, Inspector Garcia made the following statement during the suppression hearing: "If [Gonzalez] would have been ill or pregnant, as we found out later on, we wouldn't have gone through these procedures." Transcript at 88.

mary inspection line and placement in the interrogation room.

■ The second issue to consider when determining at what point a suspect must be *Mirandized* is whether or not she is being "interrogated." According to the Supreme Court, custodial questioning constitutes interrogation when the questions are "reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). Thus, "[i]n-custody questioning by INS investigators must be preceded by *Miranda* warnings, if the questioning is reasonably likely to elicit an incriminating response." *U.S. v. Mata–Abundiz,* 717 F.2d 1277, 1280 (9th Cir.1983). Of course, the routine gathering of biographical data does not implicate *Miranda.* "*Miranda* warnings are unnecessary during routine questioning and searches by customs agents." *U.S. v. Berisha,* 925 F.2d 791, 797 (5th Cir.1991). But, that exception is inapplicable where such questions are reasonably likely to inculpate the respondent. *U.S. v. Gonzalez–Sandoval,* 894 F.2d 1043, 1047 (9th Cir.1990).

■ In the case at hand, the government acknowledges that three questions were asked before *Miranda* warnings were given: (1) Are these your documents? (2) Where did you get the visa? (3) Did you realize the documents are counterfeit? In the context of the inspectors' immediate suspicion of criminal activity, the government's contention that these questions were "routine and non-custodial" is unfounded. (Gov't Brief at 5.) Clearly, each of these questions is reasonably likely to inculpate the defendant. There is a one-syllable answer to each question that would, in fact, incriminate her. These questions are undoubtedly designed to elicit an incriminating response. Thus, such obviously potentially-incriminating questions, combined with the fact that a reasonable person would determine that Gonzalez's detention constituted a restraint on freedom of movement to the degree which the law associates with formal arrest, required that Gonzalez be afforded *Miranda's* protections upon her detention in the interrogation room.

■ This court is well aware of the legitimate deference courts have given to the government along the border. Although aliens have the same rights to *Miranda* warnings as American citizens, *U.S. v. Moya,* 74 F.3d 1117, 1119 (11th Cir.1996), in determining whether or not there is "custody," a court must consider the strong governmental interest in maintaining and controlling borders. *E.g., id.* As stated earlier, routine border questions do not require *Miranda* warnings. Such deference does not, however, require a court to turn away from violations of the United States Constitution.

The character of the questioning changed as soon as defendant Gonzalez was moved from the inspector's counter to the interrogation room. At that point the questioning was no longer public, and there was the prospect, and reality, of extended and incriminating interrogation. This situation presents precisely the dangerous tendencies of custodial interrogation that *Miranda* was meant to curtail. *Miranda,* 384 U.S. at 455, 86 S.Ct. 1602. "Even without employing brutality, [or] the 'third degree[,]' ... the very fact of custodial interrogation exacts a heavy toll on individual liberty and trades on the weakness of individuals." *Id.* When the facts of a given scenario, such as this one, reveal a failure to provide a suspect with the protections afforded her by the Constitution and the Supreme Court of the United States, illegally obtained evidence must be suppressed. *See, e.g. U.S. v. Piggott,* 1994 WL 228626 (W.D.N.Y.1994).

The only question remaining, therefore, is precisely which statements must be suppressed. Clearly, all of the suspect's statements between her detention in the interrogation room and the secondary inspector's reading of her *Miranda* rights must be suppressed. These statements were borne of custodial interrogation without *Miranda* protections. However, in *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), the Supreme Court specifically rejected the proposition that the fruit of the poisonous tree doctrine, which in the Fourth Amendment context requires the exclusion of evidence or confessions obtained as a result of a constitutional violation, extends to violations of the *Miranda* decision. The Court held that a suspect's subsequent choice to waive his or her rights after a proper administration of *Miranda* warnings should ordi-

narily suffice to dissipate the coercive impact of the earlier confession and to demonstrate knowledge and voluntariness. *Elstad,* 470 U.S. at 309, 105 S.Ct. 1285. The Court also recognized, however, that *Miranda* requires that the circumstances surrounding a subsequent confession be evaluated to determine whether the confession was knowing and voluntary. *Id.*

■ Voluntariness depends in large part on whether there was a "[b]reak in the stream of events ... sufficient to insulate the second confession from the earlier taint." *Clewis v. Texas,* 386 U.S. 707, 710, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967). The standard for determining voluntariness under *Elstad* is whether, "considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *Derrick v. Peterson,* 924 F.2d 813, 817 (9th Cir.1990). After carefully considering the totality of circumstances surrounding Gonzalez's interrogation, it is determined that Gonzalez's post-*Miranda* statements were not, in fact, voluntarily made. She was held in custody and interrogated with accusatory questions in a small room for over an hour before she was advised of her rights under *Miranda.* Before being read her *Miranda* rights, she was placed in ankle shackles. Inspector Garcia testified that he advised Gonzalez of her *Miranda* rights only after she had given incriminatory statements in response to questioning in the interrogation room. Garcia then had Gonzalez repeat her incriminatory statements. Such procedures can in no way be said to cure the earlier illegally obtained statements. Faced with a similar situation, the United States Court of Appeals for the Eight Circuit determined that "[i]n this case, there was no passage of time to speak of between the unwarned confession and the subsequent warnings and confession, all of which occurred as part and parcel of a continuous process. Thus, the second confession came almost directly on the heels of the first.... [T]he second confession cannot be allowed into evidence." *U.S. v. Carter,* 884 F.2d 368, 373 (8th Cir.1989). The same reasoning applies here. Gonzalez's post-*Miranda* statements cannot be allowed into evidence. Her will was overborne by the inter-

rogation conducted by the government which was specifically designed and intended to elicit incriminating responses. Her statements and waiver were not voluntarily made.

Defendant's motion to suppress should be, and is hereby, **GRANTED.** It is, therefore,

**ORDERED** that all statements made by defendant after she was led to the interrogation room on March 17, 1998, at the Port of Entry in Eagle Pass, Texas, be, and they are hereby, **SUPPRESSED.**