UNITED STATES of America,
Plaintiff–Appellee,

v.

Rodney ROGERS, a/k/a Koseem C. Sanders, Defendant–Appellant.

No. 93–5002.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 27, 1993.

Decided March 14, 1994.

ARGUED: John Warren Hart, Beaton & Hart, P.C., Virginia Beach, Virginia, for Appellant. Mark Anthony Exley, Assistant United States Attorney, Norfolk, Virginia, for Appellee. **ON BRIEF:** Kenneth E. Melson, United States Attorney, Norfolk, Virginia, for Appellee.

Before WIDENER and WILKINS, Circuit Judges, and SPROUSE, Senior Circuit Judge.

**OPINION**

WIDENER, Circuit Judge:

Defendant Rodney Rogers, a/k/a Koseem C. Sanders, appeals his convictions of one count of conspiracy, 18 U.S.C. § 371, to evade and violate the reporting and return requirements of 26 U.S.C. § 6050I, 31 U.S.C. § 5313(a), and 31 U.S.C. § 5324; two substantive counts of evading and violating the return requirements of a trader business, in violation of 26 U.S.C. § 6050I; and one substantive count of evading and violating the reporting requirements of a domestic financial institution, in violation of 31 U.S.C. § 5324. We are of opinion that the recent Supreme Court case of *Ratzlaf v. United States,* —— U.S. ——, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) requires the vacation of Rogers's convictions and remand for a new trial.

In light of our conclusion, only a brief statement of the facts is necessary to an understanding of this case. In approximately a one year period from mid–1988 to mid–1989, the defendant Rodney Rogers purchased three BMWs and a Mercedes Benz, each costing in excess of $10,000, which he paid for with a series of payments of cash or cashier's checks, each in an amount under $10,000.00. In July of 1989, Rogers opened a retail clothing store called Ultimate Fashions, which opened a business account at Crestar Bank. Ultimate Fashions's banking records showed that large amounts of cash,

but never more than $10,000 in any one day, were deposited into its Crestar account. Rogers provided $17,650 in cash or cashier's check to Ultimate Fashions's account in seven installments of $4,000 or less between June 18, 1989 and July 14, 1989.

Rogers continued to put cash into Ultimate Fashion's cash register that did not represent sales from the store. Rogers and his girl friend Patrice Gruber, who managed the store and incorporated it as the ostensible sole owner, falsified the cash register sales receipt tapes to cover the cash being channeled from Rogers into the store and then into its bank account. Rogers bought the inventory for Ultimate Fashions from Emporio Antony's in New York. Ultimate Fashions received a total of $156,070 in inventory from Emporio Antony's; however, only $17,500 of this total was paid by check from Ultimate Fashions's bank account. Rogers sent another $36,500 to Emporio Antony's in eleven Western Union transfers from June 5, 1989 to April 25, 1990. Miss Gruber's testimony confirmed that Rogers was the sole owner of the store and tended to show both her own and Rogers's knowledge of currency reporting and return requirements.

Count One of the indictment alleged that Rogers conspired, pursuant to 18 U.S.C. § 371, for the purpose of evading the currency reporting and return requirements of both 26 U.S.C. § 6050I,[1] and 31 U.S.C. § 5313(a), in violation of 26 U.S.C. § 6050I(f) and 31 U.S.C. § 5324.[2] The overt acts charged involved the purchase of the BMW and Mer-

---

1. 26 U.S.C. § 6050I(a) provides that:
   (a) Cash receipts of more than $10,000—Any person—
   (1) who is engaged in a trade or business, and
   (2) who, in the course of such trade or business, receives more than $10,000 in cash in 1 transaction (or 2 or more related transactions),
   shall make the [currency transaction] return described in subsection (b) with respect to such transaction (or related transactions)....
   26 U.S.C. § 6050I(f) states as follows:
   (1) In general.—No person shall for the purpose of evading the return requirements of this section—
   (A) cause or attempt to cause a trade or business to fail to file a return required under this section.
   (B) cause or attempt to cause a trade or business to fail to file a return required under this section that contains a material omission or misstatement of fact, or
   (C) structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more trades or businesses.
   (2) Penalties.—A person violating paragraph (1) of this subsection shall be subject to the same civil and criminal sanctions applicable to a person which fails to file or completes a false or incorrect return under this section.
   26 U.S.C. § 7203 provides the criminal penalty for a violation of 26 U.S.C. § 6050I(f):
   Any person ... required by this title ... to make a return, ... or supply any information, who willfully fails to ... make such return, ... or supply such information ... shall ... be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $25,000 ... or imprisoned not more than 1 year or both, together with the costs of prosecution.... In the case of a willful violation of any provision of section 6050I, the first sentence of this section shall be applied by substituting "felony" for "misdemeanor" and "5 years" for "1 year".

2. 31 U.S.C. § 5313(a) states:
   When a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency (or other monetary instruments the Secretary of the Treasury prescribes), in an amount, denomination, or amount and denomination, or under circumstances the Secretary prescribes by regulation, the institution and any other participant in the transaction the Secretary may prescribe shall file a report on the transaction at the time and in the way the Secretary prescribes....
   The Secretary of the Treasury has designated the amount triggering the reporting requirement of § 5313(a) as $10,000. 31 C.F.R. § 103.22(a)(1).
   31 U.S.C. § 5324 states:
   No person shall for the purpose of evading the reporting requirements of section 5313(a) ... with respect to such transaction—
   (1) cause or attempt to cause a domestic financial institution to fail to file a report required under section 5313(a) ...;
   (2) cause or attempt to cause a domestic financial institution to file a report required under section 5313(a) ... that contains a material omission or misstatement of fact; or
   (3) structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.
   31 U.S.C. § 5322(a), sets out penalties for a violation of § 5324:
   A person willfully violating this subchapter or a regulation prescribed under this subchapter [31 U.S.C. § 5311 et seq.] ... shall be fined not more than $250,000, or imprisoned for not more than five years, or both.

cedes Benz automobiles, Ultimate Fashions, and payment to an Ohio attorney.

As for the substantive counts of structuring transactions, Rogers's transfer of funds to Emporio Antony's, including Western Union transfers, form the basis of Count Two, structuring transactions with Emporio Antony's and causing or attempting to cause Emporio Antony's to fail to file a currency transaction return in violation of 26 U.S.C. § 6050I. His cash contributions to Ultimate Fashions are the basis of Count Three, structuring transactions with Ultimate Fashions and causing or attempting to cause Ultimate Fashions to fail to file such a return in violation of 26 U.S.C. § 6050I. Rogers's structuring of Ultimate Fashions's cash deposits into Crestar Bank are the essence of Count Four, structuring transactions with Crestar Bank and causing or attempting to cause Crestar Bank to fail to file a report in violation of 31 U.S.C. § 5324.

### I.

In *Ratzlaf v. United States*, —— U.S. ——, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994), the Court held that 31 U.S.C. § 5322(a), that fixes punishment for persons willfully violating 31 U.S.C. § 5324, required the government to prove, and the district court to so instruct, that the defendant "knew the structuring he undertook was unlawful" and reversed the conviction because of the erroneous instructions given. *Ratzlaf*, —— U.S. at ——, ——, 114 S.Ct. at 658, 663–64. In *Ratzlaf*, the district court had instructed the jury that "the Government had to prove de-

fendant's knowledge of the banks' reporting obligation, but did not have to prove defendant knew the structuring was unlawful." *Ratzlaf*, —— U.S. at ——, 114 S.Ct. at 658. More specifically, the instructions given in *Ratzlaf* were that the "government does not have to prove that the defendants knew that structuring was unlawful" and that "it is not a defense that the defendants did not know that 'structuring' itself is [illegal] ...," *United States v. Ratzlaf*, 976 F.2d 1280, 1282 (9th Cir.1992), *rev'd*, —— U.S. ——, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994).

The instructions given by the district court in the trial of the case at hand were substantially in compliance with the then existing law in this circuit regarding the mens rea requirement of 31 U.S.C. § 5324 and § 5322(a). See *United States v. T.J. Rogers, Jr.*, 962 F.2d 342, 344 (4th Cir.1992).[3] In Rodney Rogers's trial, our case, the district court instructed the jury on willfulness as follows:

> Willful means no more than the Defendant charged with the duty knows what he is doing. It does not mean, in addition, he must suppose he is breaking the law.
>
> The Government need not show that the Defendant had the specific intent to violate the law regarding the structuring of currency transactions or causing a report not to be filed or filed with a material misstatement of fact.

The district court's instructions thus reject knowledge of illegality of structuring as an element of the offense and, therefore, are erroneous under *Ratzlaf*.[4]

---

3. T.J. Rogers, Jr., in 962 F.2d, is not the same as Rodney Rogers, the defendant here. In *T.J. Rogers*, we refused to extend the Supreme Court's definition of willfulness in criminal tax cases, i.e. that proof of willfulness requires a showing that defendant knew that the conduct at issue was illegal, as expressed in *Cheek v. United States*, 498 U.S. 192, 201, 111 S.Ct. 604, 610, 112 L.Ed.2d 617 (1991), to cases brought under 31 U.S.C. § 5324(3) and § 5322(a). Our *T.J. Rogers* holding conflicts with *Ratzlaf*.

4. At trial, the district court gave a single willfulness instruction and did not differentiate between the willfulness requirements of 31 U.S.C. § 5322(a), which fixes punishment for a willful violation of 31 U.S.C. § 5324, and 26 U.S.C. § 7203, which fixes punishment for a willful vio-

lation of 26 U.S.C. § 6050I. Since we are remanding this case for a new trial, we note that the district court should re-examine its willfulness instruction regarding a violation of 26 U.S.C. § 6050I(f). This offense is a criminal violation of the tax code whose penalty is specified in 26 U.S.C. § 7203. The Supreme Court has interpreted § 7203's willfulness element to mean the "voluntary, intentional violation of a known legal duty," *Cheek v. United States*, 498 U.S. 192, 201, 111 S.Ct. 604, 610, 112 L.Ed.2d 617 (1991). See also *United States v. T.J. Rogers Jr.*, 962 F.2d 342, 344 (4th Cir.1992) (construing *Cheek* as requiring a "showing that defendant knew that the conduct at issue was illegal"). In light of *Ratzlaf* and *Cheek*, the conduct that the defendant must know to be illegal under 26 U.S.C. § 6050I(f) is his own conduct of causing

**268**

## II.

■ The defendant did not object at trial to the instructions given by the district court or raise the issue on appeal. Therefore, we review for plain error under Fed. R.Crim.P. 52(b) as set forth in *United States v. Olano,* — U.S. ——, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). According to *Olano,* plain error review requires 1) error; 2) plain under current law; 3) that affects substantial rights, i.e. is prejudicial to the defendant; and 4) which seriously affects the fairness, integrity or public reputation of judicial proceedings.

■ Applying *Ratzlaf* as the law at the time of our decision, *United States v. Schooner Peggy,* 1 Cranch 103, 2 L.Ed. 49 (1801), the failure to instruct on the defendant's knowledge of the illegality of his own conduct is an erroneous omission of an essential element of the offense charged, and thus meets the first two tests of *Olano.* We are of opinion that this failure to give an instruction on a required element of the crime is an error that affects substantial rights and one that seriously affects the fairness, integrity or public reputation of judicial proceedings, as required by *Olano,* since due process requires "proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970). We have no doubt that the failure to instruct on an essential element of the crime prejudiced the defendant here, because the jury could not have been expected to make a finding beyond a reasonable doubt as to Rogers's knowledge of the illegality of his structuring, in the face of an instruction to the contrary. The Third Circuit has recently decided that the omission of an essential element of an offense is plain error under *Olano, United States v. Xavier,* 2 F.3d 1281, 1287 (3rd Cir.1993) (reversing conviction of aiding and abetting pursuant to 18 U.S.C. § 922, providing a firearm to a convicted felon, because no jury instruction given regarding the element of defendant's knowledge of the convicted felon status of the

recipient of the gun, even though evidence presented from which the defendant's knowledge of the convicted felon's status could be inferred). In conclusion, we are of opinion that the failure of the district court to properly instruct the jury as to the willfulness element of the offense, as defined in *Ratzlaf,* is plain error under *Olano* which requires vacation of Rogers's convictions.

Rogers raised three basic issues on appeal: the district court committed reversible error in admitting four tape recordings into evidence; the district court erred in enhancing Rogers's base offense level by four points under U.S.S.G. § 2S1.3(b)(1) for his knowledge that the funds were criminally derived, and four more points under U.S.S.G. § 3B1.1(a) because he was a leader of a criminal activity that involved five or more participants or was otherwise extensive; and the evidence was insufficient to support the verdict.

We are of opinion there was no error in admitting the tapes into evidence. The question with respect to sentencing is premature, and we express no opinion on that question. While we ordinarily would decide the question of the sufficiency of the evidence, *Burks v. United States,* 437 U.S. 1, 18, 98 S.Ct. 2141, 2150–51, 57 L.Ed.2d 1 (1978), to do such the sufficiency should be considered under a substantially proper instruction as to the merits, which was not given here. So we express no opinion as to that question also.

The convictions must be vacated and the case remanded for a new trial under proper instructions.

*VACATED AND REMANDED FOR A NEW TRIAL.*

---

or attempting to cause a business to fail to file a currency transaction return or to file a false return, or structuring a transaction with a busi-

ness. The government must prove that the defendant was aware of the return obligations of a trade or business and acted to evade them.