

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-8-1994

# United States of America v. Retos

Precedential or Non-Precedential:

Docket 93-3341

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"United States of America v. Retos" (1994). *1994 Decisions.* Paper 40.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/40

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

----------

No. 93-3341

----------

UNITED STATES OF AMERICA

v.

GEORGE RETOS, JR.,


Appellant

----------

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Crim. No. 92-00110-01)

----------

Argued Monday, May 2, 1994

BEFORE:   GREENBERG and GARTH, Circuit Judges
          and ROBRENO, District Judge[0]

----------

(Opinion filed June 8, 1994)


                          George Retos, Jr., Pro Se
                          Retos, Held & Mascara
                          70 East Wheeling Street
                          Washington, Pennsylvania  15301

                          Richard A. Sprague
                          James J. West (Argued)
                          Bill Wolf, Jr.
                          Sprague & Sprague
                          135 South 19th Street
                          Wellington Building, Suite 400

---

[0]  Honorable Eduardo C. Robreno, United States District Court for
the Eastern District of Pennsylvania, sitting by designation.


1

Wellington, Pennsylvania 19103
Attorneys for Appellant

Frederick W. Thieman
United States Attorney
Paul J. Brysh
Assistant U.S. Attorney
Michael L. Ivory (Argued)
Assistant U.S. Attorney
633 United States Post Office
        & Courthouse
Pittsburgh, Pennsylvania  15219

Attorneys for Appellee

----------

OPINION OF THE COURT

----------

GARTH, Circuit Judge:

Defendant George Retos ("Retos") was convicted on nine counts of an eleven-count indictment, including two counts of income tax evasion, in violation of 26 U.S.C. § 7201, and one count of currency structuring, in violation of 31 U.S.C. §§ 5324(3) and 5322(a).  On appeal, Retos contests a number of rulings made by the district court during trial.  He also argues that the district court's jury instruction with respect to the structuring count was inconsistent with the Supreme Court's holding in Ratzlaf v. United States, ___ U.S. ___, 114 S. Ct. 655 (1994), a case decided while Retos' appeal was pending before us.

We have jurisdiction pursuant to 28 U.S.C. § 1291.  Although the bulk of Retos' appeal is without merit, we conclude that, in the aftermath of Ratzlaf, the jury instruction given by the district court without objection constituted plain error, which we may review.  We will vacate Retos' structuring

2

conviction and will remand to the district court for retrial on the structuring count and for resentencing on Retos' remaining, valid convictions, which we will affirm.

I

George Retos was the managing partner of Retos, Held & Mascara, a Washington, Pennsylvania law firm. He also advised clients as a solo practitioner, separate from, and apparently concurrent to, his association with the law firm. On May 21, 1992, a federal grand jury returned an eleven-count indictment against Retos alleging numerous federal offenses arising out of his professional and personal financial activities, and the convergence of the two.

Counts 1 through 3 charged Retos with income tax evasion in violation of 26 U.S.C. § 7201.[0] The government alleged that Retos had understated his taxable income in 1985 ("Count 1"). A government audit of Retos' 1986 tax return revealed that he had understated his taxable income in 1986 by $218,714.96 ("Count 2"). Retos never filed an income tax return in 1987 ("Count 3").

---

[0]     Section 7201 provides as follows:

>     Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution.

Count 4 charged Retos with structuring a currency transaction in violation of 31 U.S.C. §§ 5324(3)[0] and 5322(a).[0] The government alleged that in connection with the purchase of an automobile dealership by a Retos client, Robert Bruno, Retos caused $15,000 to be paid over to the seller, Bud Spesak, in two separate checks, each made out to "Cash" in the sum of $7,500 (i.e., below the $10,000 currency transaction report threshold).

Count 5 charged Retos with scheming to defraud by use of wire communications, in violation of 18 U.S.C. § 1343. In 1987, Retos applied for a residential loan from a federally insured savings and loan institution using allegedly fraudulent income tax returns. In connection with his application, Retos wired $216,264.49 into his own personal bank account.

Count 6 charged Retos with making false statements in connection with a credit application, in violation of 18 U.S.C. § 1014. In 1988, Retos obtained a line of credit from a federally insured bank by providing the bank with false information concerning the status of his income tax liability and by using falsified copies of his never-filed 1987 tax return.

---

[0] 31 U.S.C. § 5324 provides as follows: "No person shall for the purpose of evading the reporting requirements of section 5313(a) . . . (3) structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions."
After the indictment issued on May 21, 1992, Congress amended § 5324, designating the existing text as subsection (a), and adding a new subsection (b). Section 5324(3) is now codified at § 5324(a)(3).
[0] 31 U.S.C. § 5322(a) provides as follows: "A person willfully violating this subchapter or a regulation prescribed under this subchapter . . . shall be fined not more than $250,000, or imprisoned for not more than five years, or both."

4

Counts 7 through 10 charged Retos with mail fraud, in violation of 18 U.S.C. § 1341. Retos had been retained by a client, Samir Gayed, to incorporate Gayed's investment company, Golden Falcon, Inc. Retos never did so. Rather, Retos falsely held himself out as the president of Golden Falcon and had Golden Falcon's interests transferred to him. The effect of this transfer was that Retos knowingly and fraudulently received, and caused to be received, through the United States mail, four revenue checks which rightly belonged to Golden Falcon.

Count 11 charged Retos with the interstate transportation of stolen property, in violation of 18 U.S.C. §§ 2314 and 2. Retos unlawfully transported a stolen limited partnership certificate from Midland, Texas to Washington, Pennsylvania.

Trial commenced on November 30, 1992. Retos immediately objected to a number of statements made by the prosecutor in his opening statement, and moved for a mistrial. The district court denied Retos' motion. On December 18, 1992, a jury found Retos guilty on nine of the eleven counts charged, including two of the three tax evasion counts and the one structuring count.[0] Thereafter, on May 4, 1993, the district court denied Retos' post-trial motion for judgment of acquittal.

On June 29, 1993, Retos was sentenced to concurrent terms of 27 months imprisonment on Counts 2, 3, and 6 through 11.

---

[0] Count 5 was dismissed by the district court judge pursuant to Federal Rule of Criminal Procedure 29. The jury acquitted Retos on Count 1.

5

He was sentenced to a consecutive term of three months imprisonment on Count 4, the structuring count. Retos also was fined $30,000 and ordered to pay restitution in the amount of $42,886.88 and a $450 special assessment. This appeal followed.

II

Retos challenges a number of pronouncements made by the prosecutor during his opening statement which, Retos claims, prejudiced the jury against him. In particular, Retos objects to the prosecutor's reference to (1) drug use, (2) Retos' frequent cash withdrawals of sums under $10,000, and (3) Retos' "crooked" law practice.

We review a district court's denial of a motion for mistrial arising out of alleged prosecutorial misconduct for abuse of discretion. United States v. Gambino, 926 F.2d 1355, 1365 (3d Cir. 1991); United States v. Tyler, 878 F.2d 753, 756 (3d Cir. 1989). We will vacate a defendant's conviction if "the prosecutor's remarks, taken in the context of the trial as a whole, were sufficiently prejudicial to have deprived [the defendant of his] right to a fair trial." United States v. DiPasquale, 740 F.2d 1282, 1297 (3d Cir. 1984). Even if a prosecutor does make an offending statement, the district court can neutralize any prejudicial effect by carefully instructing the jury "to treat the arguments of counsel as devoid of evidentiary content." United States v. Somers, 496 F.2d 723, 738 (3d Cir. 1974). Accord United States v. Leftwich, 461 F.2d 586, 590 (3d Cir. 1972) (finding no prejudice where trial judge

6

carefully instructed jurors that arguments of counsel were not evidence).

A.

Here, the reference by Assistant United States Attorney Garrett to drug-dealing was for the sole purpose of illustrating to the jury the meaning of "structuring."[0] The portion of the prosecutor's opening statement, challenged by Retos, was as follows:

> One of the charges you heard mentioned of in this case involves a currency transaction. The particular violation is that Mr. Retos did what is known as he structured a currency transaction. A currency transaction that is affected by this particular offense is a transaction for currency in excess of $10,000.
>
> Now, within the past couple of decades, I guess it has been determined by the United States Congress that there is a substantial risk that persons engaged in criminal activity will utilize currency. The reason for that is simple.
>
> When currency exchanges hands between two individuals, there is no record made. If you think about it, when you write a check, the check goes through your bank account. The bank has to keep a record of that check because the bank has to keep your account straight. They don't want to be crediting your $10,000 against somebody else's account.
>
> So that the bank keeps a record. So whenever you use a check or some written instrument in connection with the financial transaction, there is a record. But if you simply use currency, there is not any record. So in order to fill that gap, in 1971, I think it was, the United States Congress passed a law that provided that whenever a

---

[0] We discuss Count 4, the structuring count, in Section IV, infra.

bank engages in a transaction with a customer involving more than $10,000 in cash, the bank must file a report.

So, in other words, <u>if I go to my bank because I am a drug dealer or because I am a tax cheat</u>, and I want to create a transaction that does not have any record to it, and I get my $15,000 in currency, there is going to be a record because the bank has to file a report saying Garret [i.e., the prosecutor] got 15 grand.

So it does not necessarily say what I did with the 15 grand, but it says I had it. So there is at least that much of a record.

Now, when Congress passed the law, as I say, it required the bank to file a report and if the bank engaged in a transaction for more than $10,000, and did not file a report, the bank itself and bank employee who engaged in the transaction could be prosecuted for violating the law.

In more recent years, I guess it has probably been about within the last ten years or so, the Congress also passed a law that provided that, if an individual designs or structures a transaction in such a way as to prevent the bank from filing a currency transaction report, then that individual is violating the law. In other words, Garret does not go to the bank once and get $15,000, Garret goes to the bank twice -- see, I am a smart guy. I get $7500 one time and $7500 the next time. There was never any $10,000 that the bank gave me, so the bank never had a $10,000 transaction to report.

Well, Congress said time out; no. If you, Garret, structure your transaction in order to avoid ever exceeding $10,000, you have violated the law because you prevented the bank from filing the currency transaction report.

(Emphasis added.)

It is clear from this passage that the prosecutor did not tell the jury that Retos was a drug dealer, nor did the prosecutor charge Retos with a drug offense. As the district court explained in denying Retos' motion for mistrial: "Mr.

8

Garret [the prosecutor] did that in the context of explaining the congressional context in that statute. At no point is there any indication Mr. Retos is charged with a drug offense or is there any faintly remotely connecting him." See United States v. Strissel, 920 F.2d 1162 (4th Cir. 1990) (denying appellant's request for new trial based on argument that prosecutor had compared him to "Al Capone" where reference to Capone was for the purpose of illustrating that RICO statute applies to anyone who engages in racketeering activity, not just gangsters).

B.

Second, the prosecutor's reference to Retos' numerous currency transactions involving sums under $10,000 did not amount to an accusation of uncharged criminal conduct, as Retos argues. The portion of the prosecutor's opening statement, challenged by Retos, was as follows:

> Now, you will hear in this particular case that Mr. Retos was well aware of the currency transaction report law. In fact, we will demonstrate for you some transactions in which currency reports were filed in connection with Retos transactions.
> You will also hear that Mr. Retos in fact on a frequent basis obtained currency in less than $10,000 by various banking transactions . . . The charge before you involves a particular transaction in which on behalf of a client Mr. Retos structured a currency transaction deal in order to avoid the report.

We have held that "[i]f an opening statement is an objective summary of evidence the government reasonably expects to produce, a subsequent failure in proof will not necessarily

9

result in a mistrial." United States v. Wright-Barker, 784 F.2d 161, 175 (3d Cir. 1986). Here, the prosecutor's statement was an "objective summary" of the evidence the government expected to produce and, ultimately, there was no failure in proof. At trial, witnesses testified as to Retos' practice of breaking down deposits of $10,000 or more into smaller amounts. This evidence was directly relevant to the issue of whether Retos purposefully engaged in structuring the $15,000 currency transaction alleged in Count 4 of the indictment.

## C.

Finally, the prosecutor's reference to Retos' "crooked law practice" was clearly related to the tax-evasion offenses charged in the indictment. The portion of the prosecutor's opening statement, challenged by Retos, was as follows:

> [T]he evidence that you will hear in this case will delve into the law practice of the defendant, George Retos, . . . . The evidence will show that it was a crooked law practice, crooked in that Mr. Retos violated his legal duty to maintain a wall between his own business on matters being handled for clients, crooked in that Mr. Retos transacted his business in such a manner as to hide his income and evade his income taxes, and crooked in that Mr. Retos helped himself to client's money.

Evidence presented at trial supported the prosecutor's characterization of, and allegations with respect to, Retos' shady professional practices. Those practices were directly connected to the specific criminal offenses with which Retos was charged, and which the government was required to prove.

10

D.

In any event, the district court thoroughly and repeatedly instructed the jury that the parties' opening statements were not to be considered as evidence.  In the context of Retos' trial as a whole, we find no lingering prejudicial effect which can be imputed to the prosecutor's opening statement.

In sum, the prosecutor's statements were not improper, there was no failure of proof, and the district court gave curative instructions to the effect that the prosecutor's arguments were not to be considered as evidence.  Accordingly, we hold that the district court did not abuse its discretion in denying Retos' motion for mistrial.


III

Retos next argues that the district court erred in permitting James Celestine to testify as to $36,000 in family trust funds which Celestine had given to Retos to manage, but which Retos transferred into his own personal bank account. Retos argues that Celestine's testimony was both irrelevant, under Federal Rule of Evidence 402,[0] and inadmissible, under Federal

---

[0]     Rule 402 provides as follows: "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority.  Evidence which is not relevant is not admissible."

11

Rule of Evidence 404(b).[0] Retos claims that he ultimately transferred the money from his personal account to the law firm's client trust account, the firm divided the partnership's income among the partners, and the individual partners paid taxes on the "embezzled" $36,000. In addition, Retos emphasizes that he was prepared at trial to stipulate that in 1986, he had received the $36,000 in his personal income.

The government argues that Celestine's testimony was relevant to establish Retos' 1986 income level. The government claims that Retos did not, and could not, establish conclusively that the $84,283.62 in funds transferred from Retos' personal account to the firm's account during 1986, included the $36,000 which Retos had embezzled from Celestine. The government refused Retos' offer to stipulate to the $36,000 as income to Retos because it wanted Celestine to testify. The government contends that when Celestine told Retos that IRS agents had been asking him questions about the $36,000, Retos had instructed Celestine to tell the authorities that Celestine had loaned the money to Retos. Proceeds from a loan, of course, do not constitute taxable income, while embezzled funds do. The government argued that this evidence was probative of willfulness, an element it was required to prove to convict Retos of tax evasion.

We review a district court's decision to admit or exclude evidence for abuse of discretion. <u>United States v.</u>

---

[0] Rule 404(b) provides in relevant part as follows: "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. . . ."

12

<u>Console</u>, 13 F.3d 641, 656 (3d Cir. 1993); <u>United States v.</u>
<u>Eufrasio</u>, 935 F.2d 553, 571 (3d Cir. 1991).

At trial, the district court judge held that the Celestine testimony was relevant, even if marginally so, under Rule 402. In so holding, the district court concluded that Celestine's testimony would establish the source of the unreported income, as well as part of Retos' level of income for 1986. In addition, the district court determined that Celestine's testimony could demonstrate willfulness. It therefore concluded that the probative value of Celestine's testimony outweighed any prejudicial effect under Federal Rule of Evidence 403.[0] The court explicitly held that Rule 404(b) was not implicated in its ruling because the embezzlement evidence had relevance independent of Retos' character.[0]

Our review of the record reveals that the testimony with respect to Retos' embezzlement of Celestine's $36,000 trust fund was somewhat complicated. The inference of willfulness the government sought to establish through this testimony was subtle, yet highly probative. Despite Retos' arguments to the contrary, the government's expert did not concede that the $36,000 became a "wash" transaction once Retos transferred a total of $84,283.62

---

[0] Rule 403 provides as follows: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

[0] Thereafter, the district court reconsidered and reaffirmed its ruling which admitted the Celestine testimony, two more times.

to the law firm's trust account.  Nor do we believe that there is record evidence supporting Retos' characterization of the transaction as a "wash," inasmuch as the $36,000 could not be identified as a part of the total monies transferred.

Rather, the record demonstrates that after Retos transferred the $36,000 to his personal account, his ledger card reflected a balance of $35,671.  That is, Retos immediately used at least part of the $36,000 to cure an existing negative balance in his personal account.

In addition, there is no record evidence that the firm of Retos, Held & Mascara, as distinct from George Retos, solo practitioner, in any way earned a fee for legal work performed on behalf of James Celestine.  Nor does the record contain evidence that Retos forwarded the $36,000 to the firm because he believed it was a fee owed to the firm on the Celestine matter.  In fact, Retos freely admits that he was prepared to stipulate at trial to the fact that the full $36,000 should have been recorded as income to him on his 1986 personal income tax return.

It is the trial court, of course, and not the Court of Appeals, which is in the best position to consider the complicated evidentiary issues involved in a given case, and to strike the balance required by Rule 403.  United States v. Gatto, 995 F.2d 449, 457 (3d Cir. 1993; United States v. Sampson, 980 F.2d 883, 889 (3d Cir. 1992).  Here, the district court scrupulously analyzed the propriety of the government's evidence when it was first offered, and re-analyzed its ruling throughout the course of the trial.  It concluded on each of these occasions

14

that the testimony elicited by the government was relevant in proving the underlying elements of the offenses charged.

Retos has not cited a case which even suggests that the district court committed legal error.[0] From our vantage point -- based on the record before us -- we are satisfied that the district court's Rule 403 balancing of prejudice and probity

---

[0] Among other of Retos' arguments, he asserts that the embezzlement evidence was inadmissible under Federal Rule of Evidence 404(b). Retos argues that under United States v. Sampson, 980 F.2d 883 (3d Cir. 1992), the government was obligated to (1) proffer a logical chain of inferences consistent with the government's theory of the case, and (2) articulate reasons why the evidence goes to show something other than character.

The district court concluded, however, and we agree, that the Celestine testimony was not introduced to prove criminal propensity or bad character but was admitted, rather, as direct substantive evidence bearing on the two elements of tax evasion: (1) Retos' level of income, and (2) willfulness. Rule 404(b) simply was not implicated.

Retos also objected to the government's summation which referred to the embezzlement evidence as that evidence related to Counts 7 through 11, the mail fraud counts. The district court denied that objection on the grounds urged by the government, i.e., that Celestine's testimony properly had been admitted as substantive evidence. We agree.

As we have explained previously, it is unavoidable that evidence, once admitted as substantive evidence for certain counts, may convey unfavorable impressions to the jury with respect to other counts for which it was not offered. See United States v. Blyden, 964 F.2d 1375, 1377-79 (3d Cir. 1992) (noting that admitting evidence to prove an essential element of one count, but "excluding" it as to other counts for which it might have been inadmissible under Rules 403 and 404(b), would have no practical effect). However, as we recognized in Blyden, unforeseen developments can occur during trial which would warrant rulings or instructions concerning the use of the evidence with respect to counts for which it was not introduced. Id. at 1379. Nevertheless, in this case, we do not believe that the district court abused its discretion in denying Retos' motion for mistrial. The evidence properly was before the jury, and the prosecutor's summation was not so prejudicial as to have deprived Retos of his right to a fair trial. United States v. Gambino, 926 F.2d 1355, 1365 (3d Cir. 1991).

constituted a proper exercise of its discretion.  Simply stated, to convict Retos, the government was required to prove willfulness and income level.  The embezzlement evidence, and Retos' effort to have Celestine characterize the $36,000 as a loan, was probative of both.  Consequently, we hold that the district court did not abuse its discretion in admitting the Celestine evidence.

IV

Finally, Retos argues that the district court's jury instruction with respect to currency structuring was inconsistent with the Supreme Court's decision in Ratzlaf v. United States, ___ U.S. ___, 114 S. Ct. 655 (1994), and that, therefore, his conviction for violating 31 U.S.C. §§ 5324(3) and 5322, must be vacated.

A.

Because Retos failed to object to the jury instruction at trial, our review is limited to plain error under Federal Rule of Criminal Procedure 52(b).[0]  United States v. Olano, ___ U.S. ___, 113 S. Ct. 1770 (1993).  For plain error to exist:

> There must be an "error" that is "plain" and that "affects substantial rights."  Moreover, Rule 52(b) leaves the decision to correct the forfeited error within the sound discretion of the Court of Appeals, and the court should not exercise that discretion unless the error "'seriously affect[s] the fairness, integrity

---

[0]    Rule 52(b) provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

16

or public reputation of judicial
proceedings.'"

Id. at 1776 (internal citations omitted).

A deviation from a legal rule is "error." Id. at 1777.
A "plain" error is one which is "clear" or "obvious." Id. In
most cases, an error will "affect substantial rights" where it is
prejudicial: "It must have affected the outcome of the District
Court proceedings." Id. at 1778.

Finally, Rule 52(b) is a permissive, not a mandatory
rule. "If the forfeited error is 'plain' and 'affect[s]
substantial rights,' the Court of Appeals has authority to order
correction, but is not required to do so." Id. at 1778. We
will, however, exercise our discretion "in those circumstances in
which a miscarriage of justice would otherwise result," id. at
1778-79, quoting United States v. Young, 470 U.S. 1, 15 (1985),
that is, where the defendant is actually innocent, or where,
regardless of the defendant's innocence or guilt, the error
"seriously affect[s] the fairness, integrity or public reputation
of judicial proceedings." Olano, 113 S. Ct. at 1779, quoting
United States v. Atkinson, 297 U.S. 157, 160 (1936). Accord
United States v. Martinez-Hidalgo, 993 F.2d 1052, 1057 (3d Cir.
1993); Government of Virgin Islands v. Smith, 949 F.2d 677, 681
(3d Cir. 1991).


1.

Our first inquiry then is whether the district court
committed error in failing to charge the jury in accordance with

the Supreme Court's decision in Ratzlaf v. United States, ___ U.S. ___, 114 S. Ct. 655 (1994).  In Ratzlaf, the Supreme Court held that "[t]o convict Ratzlaf of the crime with which he was charged, violation of 31 U.S.C. §§ 5322(a) and 5324(3), the jury had to find he knew the structuring in which he engaged was unlawful."  114 S. Ct. at 663.  Because the Ratzlaf district court had failed to instruct the jury in this regard, the Supreme Court reversed Ratzlaf's structuring conviction.

Here, the district court instructed the jury with respect to Count 4 as follows:

> In order to prove the defendant guilty of Count 4, the Government must establish, by proof beyond a reasonable doubt, the following four elements.
>
> First, that on or about the dates alleged in the indictment June 26, 1987 and June 29, 1987, George Retos knew that the currency transaction reporting requirements required banks to report currency transactions in excess of $10,000 in one business day.
>
> Second, that George Retos knowingly and willfully structured or assisted in structuring a currency transaction in excess of $10,000.  A currency transaction includes the negotiation of a check for cash, but does not include a wire transfer or other transaction which does not include the physical transfer of currency.  Structuring refers to a person, acting alone, or in conjunction with other persons, conduct or attempts to conduct one or more transactions in currency, in any amount, at one or more financial institutions, on one or more days, in any manner, for the purpose of evading the reporting requirements applicable to financial institutions.  Here, the Government claims that the transactions were the negotiation of two $7,500 checks drawn on Mr. Retos' firm's account at the Gallatin National Bank.

18

The third element that Mr. Retos' specific intent in structuring the transaction was to avoid activating the banks' reporting requirements established by law. And fourth, the transaction involved one or more domestic financial institutions. With respect to this last element, I charge you that as a matter of law the two banks alleged in the indictment to have been involved in this count, Pittsburgh National Bank and Gallatin National Bank are domestic financial institutions.

If you find that the Government has proved all four elements beyond a reasonable doubt, then you should find the defendant guilty on this count. If you find that you have a reasonable doubt as to any one or more of the elements, you must find the defendant not guilty.

(Emphasis added.)

Our review of the charge given in the present case reveals that the district court only instructed the jury that it was required to find that Retos knew of the bank's obligation to file a currency transaction report, and that Retos intended to avoid activating the bank's reporting obligation, in order to convict. The law of this circuit, prior to Ratzlaf, required no more, and no different, a charge than that given by the district court judge here. Thus, the content of the district court's instruction, and Retos' failure to object to the district court's instruction, were quite understandable. Accord United States v. Jones, No. 93-2164, slip op. at ___ n.9 (7th Cir. April 5, 1994).

Nevertheless, the district court's charge did not explicitly instruct the jury that the government was required to prove, and that the jury was required to find, that Retos had

19

actual knowledge that structuring was unlawful.  Under <u>Ratzlaf</u>, the absence of such an instruction now constitutes legal error.

2.

The second stage of our inquiry under <u>Olano</u> is to determine whether the error committed by the district was "plain," i.e., clear and obvious.  In <u>Olano</u>, the Supreme Court noted that it "need not consider the special case where the error was unclear at the time of trial but becomes clear on appeal because the applicable law has been clarified."  113 S. Ct. at 1777.  That, however, is the case before us now.

Although the structuring charge offered by the district court judge at the time of trial in December 1992 was consistent with the law of this circuit, while Retos' appeal was pending, the applicable law was clarified by the United States Supreme Court.  That is, on December 16, 1992, when the district court judge charged the jury in the instant case, its instruction essentially was correct -- the district court judge was not required to instruct the jury that Retos had to know that structuring was illegal.  Not until January 11, 1994, when <u>Ratzlaf</u> was decided and the "knowledge" element of § 5322(a) clarified, did the error committed by the district court judge become clear and obvious, i.e., "plain."

The question, therefore, arises whether Retos should be given the benefit of the change in the structuring law brought about by <u>Ratzlaf</u>.  We have no hesitancy in holding that full retroactive effect should be accorded to <u>Ratzlaf</u> in the present

20

appeal. Griffith v. Kentucky, 479 U.S. 314, 322 (1987); United States v. Jones, No. 93-2164, slip op. at \_\_\_ (7th Cir. April 5, 1994). See also United States v. Rogers, No. 93-5002 (4th Cir. March 14, 1994). As the Supreme Court held in Griffith:

> [A] new rule for the conduct of criminal
> prosecutions is to be applied retroactively
> to all cases, state or federal, pending on
> direct review or not yet final, with no
> exception for cases in which the new rule
> constitutes a "clear break" with the past.

479 U.S. at 328.

Griffith was decided in a constitutional context. However, the government has not argued that the same principle is inapplicable to the present statutory context involving the currency structuring statute, 31 U.S.C. § 5324, and we know of no reason why the holding in Ratzlaf should not benefit Retos in the instant action. Thus, inasmuch as the district court's structuring charge was clearly and obviously erroneous under current law, we hold that it constituted "plain" error.

3.

Our final "plain error" inquiry is whether or not the district court's plain error "affect[ed Retos'] substantial rights." Olano, 113 S. Ct. at 1778. As mentioned above, in most cases, an error will affect substantial rights where it is prejudicial: "It must have affected the outcome of the District Court proceedings." Id.[0]

---

[0] We note that, under Rule 52(b), it is the defendant who bears the burden of persuasion with respect to prejudice. Olano, 113 S. Ct. at 1778.

21

Since <u>Ratzlaf</u> was decided, two Courts of Appeals have reversed structuring convictions which were returned on non-<u>Ratzlaf</u> jury charges.  Both cases held that the erroneous charges constituted error which was plain, and which had "affected substantial rights" of the respective defendants.

In <u>United States v. Jones</u>, No. 93-2164 (7th Cir. April 5, 1994), the Seventh Circuit held that the district court's instruction was "clear and obvious error under <u>Ratzlaf</u>."  The Court of Appeals also held that the erroneous jury instruction was prejudicial, inasmuch as it "clearly affected the outcome of the unlawful structuring charge because the government had presented no evidence at trial to establish this element of the offense."

The Fourth Circuit, too, in <u>United States v. Rogers</u>, No. 93-5002 (4th Cir. March 14, 1994), reversed a structuring conviction because the district court's charge was at odds with that required under <u>Ratzlaf</u>:

> [T]he failure to instruct on the defendant's knowledge of the illegality of his own conduct is an erroneous omission of an essential element of the offense charged, and thus meets the first two tests of <u>Olano</u>.  We are of the opinion that this failure to give an instruction on a required element of the crime is an error that affects substantial rights and one that seriously affects the fairness, integrity or public reputation of judicial proceedings, as required by <u>Olano</u>, since due process requires "proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  <u>In re Winship</u>, 397 U.S. 358, 364 (1970).  We have no doubt that the failure to instruct on an essential element of the crime prejudiced the defendant here, because the

22

> jury could not have been expected to make a finding beyond a reasonable doubt as to Roger's knowledge of the illegality of his structuring, in the face of an instruction to the contrary.

Id., slip op. at 7.

Unlike the defendants in Jones and Rogers, however, Retos is an attorney-at-law. As the government argued before us, a jury certainly could have inferred that Retos knew his actions were unlawful. By that token, it was urged that the district court's error -- its omission of an essential element of the offense charged -- did not affect the outcome of the district court proceedings and, thus, was not prejudicial. We cannot agree.

Rather, we find ourselves constrained by the Supreme Court's decision in In re Winship, 397 U.S. 358, 364 (1970), and our own decision in United States v. Xavier, 2 F.3d 1281, 1287 (3d Cir. 1993), to hold that Retos was indeed prejudiced by the district court's error. In Xavier, we held that the district court's failure to instruct the jury as to a required element of the crime charged constituted a plain error which had affected the defendant's rights. We explained:

> Here, there can be no question that the failure to instruct had an impact on the jury's deliberations, because the jury could not have been expected to make a finding beyond a reasonable doubt as to Xavier's knowledge of his brother's status as a felon in the absence of an instruction to do so. The question, then, is whether the error in failing to instruct was prejudicial. In light of Winship's instruction and the evidence presented, we must conclude the failure to instruct on an essential element of the offense affected Clement Xavier's due

23

process rights in a manner that "'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.'" Olano, 113 S. Ct. at 1779.

2 F.3d at 1287 (vacating conviction for aiding and abetting ex-felon's possession of firearm). Cf. United States v. Curran, No. 93-1444 (3d Cir. March 30, 1994).[0]

We remain unprepared to adopt a per sé rule that the omission of an essential element of an offense constitutes "plain error." Xavier, 2 F.3d at 1287 (3d Cir. 1993); United States v. Anderson, 859 F.2d 1171, 1175-76 (3d Cir. 1988).[0] Here, however,

---

[0] In Curran, we held that the district court's erroneous explanation of the law on the defendant's duty to report to the Federal Election Commission, under 18 U.S.C. § 2(b), constituted plain error and that the case had to be retried. We then alerted the district court to other deficiencies in its jury instruction, one of which was its failure to give a Ratzlaf instruction on § 2(b)'s "willfulness" requirement.

[0] In Anderson, the defendant was convicted of four drug offenses, as well as one count of operating a continuing criminal enterprise, in violation of 21 U.S.C. § 848(d). We upheld the defendant's conviction on the latter count even though the trial judge had failed to instruct the jury as to an essential element of the crime, i.e., that to find a "continuing series of violations" under § 848(d), the jury must unanimously find and agree upon three violations of the federal drug laws.

While recognizing that the district court's charge to the jury was legally erroneous, we refused to find "plain error," inasmuch as our review of the entire record revealed that Anderson had not been prejudiced by the district court's error:

The jury unanimously found Anderson guilty of three counts of distribution of heroin and one count of conspiracy to possess with intent to distribute heroin and cocaine in addition to the continuing criminal enterprise count. In such a circumstance it is impossible to conclude that the jury may not have been in unanimous agreement that Anderson was guilty of three underlying drug crimes. Thus, it cannot be said that the district judge's error in any way prejudiced

24

the evidence presented by the government on Retos' structuring count, while sufficient, was not conclusive. In such a case, we cannot be certain that the jury found beyond a reasonable doubt that Retos knew his actions were unlawful, absent a specific instruction from the district court judge.[0]

---

> the jury's deliberations or resulted in
> manifest injustice.

859 F.2d at 1176.

In contrast, in <u>Xavier</u>, we reversed the defendant's conviction for aiding and abetting an ex-felon's possession of a firearm. We held that the district court judge had committed a clear error in failing to instruct the jury that it was required to find that Xavier had knowledge that his brother -- the ex-felon at issue -- was, in fact, an ex-felon. In addition, after a thorough review of the record, we held that Xavier was, in fact, prejudiced by the district court's error, despite the existence of record evidence from which the jury could have inferred the requisite knowledge:

> [A] jury could have inferred, on a
> <u>preponderance</u> of the evidence presented at
> trial [internal reference omitted] that
> Xavier knew his brother was an ex-felon, that
> evidence is not so conclusive as to have
> assured Xavier's due process right to "proof
> beyond a reasonable doubt of every fact
> necessary to constitute the crime with which
> [a defendant] is charged." <u>Winship</u>, 397 U.S.
> at 364.

2 F.3d at 1287 (emphasis in original).
[0] We recognize that <u>Henderson v. Kibbe</u>, 431 U.S. 145, 154 (1977), has been cited consistently for the proposition that "[i]t is a rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." We note, however, that <u>Henderson</u> arose in a habeas context, and that the Supreme Court itself acknowledged in its opinion that "[t]he burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment <u>is even greater than the showing required to establish plain error on direct appeal</u>." 431 U.S. at 154 (emphasis added).

B.

Having determined that plain error permits our review, the only remaining issue, then, is whether we should exercise our discretion under Rule 52(b) and take corrective action. Our review of the record satisfies us that the district court's understandable but, nevertheless, erroneous failure to instruct Retos' jury in accordance with Ratzlaf, "seriously affect[ed] the fairness" of Retos' trial, United States v. Olano, 113 S. Ct. at 1779, and thereby resulted in severe prejudice to him, a hallmark of manifest injustice. Accord United States v. Jones, No. 93-2164 (7th Cir. April 5, 1994); United States v. Rogers, No. 93-5002 (4th Cir. March 14, 1994).

V

Thus, we will vacate Retos' conviction on Count 4, the structuring count. The government, of course, may, in its discretion, retry Retos on Count 4, inasmuch as our vacatur of Retos' structuring conviction did not result from a finding of insufficient evidence. United States v. Beros, 833 F.2d 455, 467 n.13 (3d Cir. 1987); United States v. Pervez, 871 F.2d 310, 319 (3d Cir. 1989).

We will affirm Retos' convictions on Counts 2, 3, and 6 through 11, but we will remand to the district court for resentencing. We do so, because we cannot be certain that the district court would have imposed the same sentence had Retos not been convicted on Count 4, the structuring count.

26

Although it is clear that Retos was sentenced to a consecutive term of three months imprisonment on the Count 4 conviction, we note that the district court failed to explain how it allocated the $30,000 fine which it had imposed, among the nine counts upon which Retos was convicted. Consequently, we cannot ascertain what part, if any, of the $30,000 fine was imposed as punishment for the structuring conviction, as distinct from punishment for Retos' other convictions.

That being said, we express no opinion on resentencing. The district court is free to impose the same sentence -- and the same fine -- on the remaining convictions, if it deems such sentence appropriate and lawful, providing of course that it allocates the fine among the particular counts on which Retos was convicted.