32 F.3d 563
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
John Lincoln COLEMAN, Defendant-Appellant.
 No. 93-5673.
 United States Court of Appeals, Fourth Circuit.
 Argued May 13, 1994.
Decided Aug. 15, 1994.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Robert D. Potter, District Judge. (CR-93-1)
 Argued Marshall Anthony Swann, Charlotte, NC, for appellant.
 Robert Jack Higdon, Jr., Asst. U.S. Atty., Charlotte, NC, for appellee.
 On brief Jerry W. Miller, U.S. Atty., Charlotte, NC, for appellee.
 W.D.N.C.
 AFFIRMED.
 Before WILKINSON, Circuit Judge, DUPREE, Senior United States District Judge for the Eastern District of North Carolina, sitting by designation, and KNAPP, Senior United States District Judge for the Southern District of West Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Convicted by a jury following his trial on a one-count bill of indictment charging him with conspiring with one Rico Elleco Watts to possess with intent to distribute cocaine in violation of 21 U.S.C. Secs. 841(a)(1) and 846, John Lincoln Coleman raises four issues on his appeal from a sentence of 120 months' incarceration: (1) the sufficiency of the evidence to support his conviction; (2) whether the district court erred by not giving the jury a multiple conspiracy instruction; (3) whether the district court erred in admitting certain testimony; and (4) whether the district court erred in admitting a tape recorded conversation. Finding no error in the record, we affirm.
 
 
 2
 On November 24, 1991, a black male entered the Charlotte Douglas International Airport and approached a U.S. Air ticket agent and inquired about a flight bound for Nashville, Tennessee. The individual, who identified himself as "Clark," undertook to pay cash for a ticket and attempted to check his luggage. In accordance with U.S. Air guidelines, the agent requested identification from the individual. At first, he stated that he had no identification, but after being advised that proper identification was required to purchase the ticket, he produced a North Carolina driver's license bearing the name of "Potts," which investigators later discovered was that of Darryl Potts.
 
 
 3
 Upon noting that the name on the driver's license and the name originally used by the man were different, the ticket agent became suspicious and contacted his supervisor who ordered the agent to Xray the luggage. Upon returning to the ticket counter to inform the man of the problem, the agent found that the man and his luggage were gone. Shortly the man returned, but when he was issued a ticket he informed the ticket agent that he no longer wished to check the bag.
 
 
 4
 As the unidentified man was hurrying off to board his flight, the ticket agent learned from another person in line that the man had taken his bag outside the terminal and checked it with a skycap. The agent notified his supervisor once again and the bag was immediately retrieved and X-rayed by airport officials. The man was prevented from boarding the plane and directed to the luggage service area, but he never arrived.
 
 
 5
 The airport officials decided to open the bag, and once inside, they found several packages concealed among various articles of clothing. The suitcase and these packages were turned over to the Narcotics Interdiction Task Force (NITF), a joint task force composed of the Charlotte Police Department Vice and Narcotics Unit and agents of the North Carolina State Bureau of Investigation. A later test of the contents of the packages revealed three kilograms of cocaine.
 
 
 6
 In the course of determining the true identity of the black male who had attempted to check the bag containing the cocaine, the driver's license used by the man led police to Darryl Potts. Potts was interviewed by investigators with NITF who concluded that he was not involved in the drug violation. Potts, however, advised the investigators that he believed his cousin, Rico Watts, had stolen his driver's license and that in order to clear his name he would assist them.
 
 
 7
 In cooperation with the investigators, Potts met with his cousin, Rico Watts, on two separate occasions. Potts learned that Rico knew about the cocaine at the airport and that he wanted Potts to get the suitcase filled with the cocaine from the airport. The investigators equipped Potts with a recording device and directed him to try to get his cousin to explain the details surrounding the incident at the Charlotte airport.
 
 
 8
 Pursuant to that direction, Potts returned to his cousin's residence with the recording device on his body and met Rico Watts, a "J.C." and two unidentified females. At trial, Potts identified the defendant John Coleman as the "J.C." he had met that day. In the recorded conversation, which the trial judge allowed the prosecution to play, "J.C." described in great detail all of the events which took place on November 24, 1991 at the Charlotte Douglas International Airport.
 
 I.
 
 9
 Coleman's first challenge to his conviction is that the evidence was insufficient to convict him of conspiracy to possess with the intent to distribute cocaine. Such challenges to sustain a conviction are reviewed under the familiar standard of Glasser v. United States, 315 U.S. 60 (1942), which requires that a jury's verdict must be sustained "if there is substantial evidence, taking the view most favorable to the Government, to support it." Id. at 80; United States v. Brewer, 1 F.3d 1430, 1437 (4th Cir.1993). Thus, the inquiry becomes whether there is substantial evidence to support a finding that every element of the conspiracy offense has been proven beyond a reasonable doubt.
 
 
 10
 In establishing a drug conspiracy the government must prove: (1)an agreement between two or more persons to undertake conduct that would violate the laws of the United States relating to controlled substances, and (2) the defendant's willful joinder in that agreement. See United States v. Clark, 928 F.2d 639, 641-42 (4th Cir.1991); United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir.1992). In proving the agreement the government frequently relies on circumstantial evidence. United States v. Giunta, 925 F.2d 758, 764 (4th Cir.1991). Such is the case here.
 
 
 11
 That evidence showed that a black male using false identification attempted to board a flight to Nashville, Tennessee with a bag containing approximately three kilograms of cocaine. Agent William Holbrook, a special agent of the North Carolina State Bureau of Investigation, testified that an inventory of the bag confiscated at the Charlotte Douglas International Airport revealed the cocaine, as well as various drug paraphernalia which from his experience suggested that the individual possessing the cocaine intended to distribute it. (Record at pp. 91-92.) In addition, Darryl Potts testified that his stolen license was duplicated at a Monroe, North Carolina address and that the only person he knew in Monroe was his cousin, Rico Watts. (Record at pp. 187-190.) Potts further testified that when he confronted Watts for the first time, he learned that his license had been used by John Coleman to send the cocaine to Nashville, Tennessee. (Record at p. 190.)
 
 
 12
 During his second meeting with Watts, which was recorded, Potts testified that he met an individual known to him at that time as "J.C." (Record at p. 194.) The recorded conversation of this meeting introduced at trial and played for the jury clearly established that the J.C., who was later identified at trial by Potts as the defendant John Coleman, used the stolen license at the Charlotte airport as he was planning to transport three kilograms of cocaine to Nashville, Tennessee. (Record at pp. 252-68.)
 
 
 13
 The tape recording also demonstrated that Watts and Coleman were still trying to retrieve the suitcase containing the cocaine from the airport without alerting the authorities at the time they were apprehended.
 
 
 14
 When all of the evidence is viewed in the light most favorable to the government, it suffices to show Coleman's participation in the conspiracy, and his contention to the contrary is without merit.
 
 II.
 
 15
 Coleman's second contention is that the district court erred by not giving a jury instruction on multiple conspiracy, such as the one approved by this court in United States v. Urbanik, 801 F.2d 692, 695-96 (4th Cir.1986). The government responds by asserting that defendant failed to preserve this argument for appeal because he did not object to the trial court's conspiracy instruction on this ground. Federal Rule of Criminal Procedure 30 provides in pertinent part that "[n]o party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection."
 
 
 16
 In the present case, Coleman objected to the instruction on conspiracy. When questioned by the court as to the basis of the objection, however, Coleman's counsel stated only that "there wasn't any evidence about conspiracy." (Record at p. 243.) He made no mention of an objection based on a failure to instruct on multiple conspiracy and at no time did he request such an instruction. Because Coleman failed to comply with F.R.Crim.P. 30, he has not preserved this objection for appeal, and the trial court's instruction will be reviewed only for plain error pursuant to F.R.Crim.P. 52(b). See United States v. Rogers, 18 F.3d 265, 268 (4th Cir.1994). And we have held that the plain error exception to Rule 30, F.R.Crim.P., is to be sparingly used. United States v. Brewer, supra.
 
 
 17
 Our review of the trial court's instruction on conspiracy (Record at pp. 230-34), demonstrates no plain error under the four-step procedure established in United States v. Olano, 113 S.Ct. 1770 (1993). Accordingly, Coleman's second assignment of error is without merit.
 
 III.
 
 18
 In the third issue raised by Coleman he asserts that the district court erred in the admission of hearsay evidence offered by the government to bolster its identification of Coleman. We review the trial court's admission of this evidence under an abuse of discretion standard. United States v. Blevins, 960 F.2d 1252, 1255-56 (4th Cir.1992). Federal Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."
 
 
 19
 The evidence Coleman contends was prejudicial hearsay concerned motor vehicle records, traffic tickets, rental receipts, and a conversation regarding the cocaine coming from Los Angeles, California to an individual in Matthews, North Carolina. (Record at pp. 119-120, 217). This evidence was elicited by the government from Special Agent Holbrook in response to the question: "[H]ow did you go about determining who J.C. was?"
 
 
 20
 Agent Holbrook testified that his investigation at one time focused on an individual in Englewood, California. As a result of this investigation he obtained a photograph from the Englewood Police Department of an individual, whom Potts subsequently identified as John Coleman. This evidence was offered to explain the procedures used to link Coleman to Darryl Potts' driver's license. It was not offered for the purpose of identifying Coleman but only to outline the investigative process leading up to Coleman's identification. As such, Holbrook's testimony was not inadmissible hearsay. See United States v. Love, 767 F.2d 1052 (4th Cir.1985), cert. denied, 474 U.S. 1081 (1986) (testimony outlining the background of an investigation was not offered to prove its truth, and thus was not hearsay). The same is true with respect to the motor vehicles records and other items alleged by Coleman to have been inadmissible on hearsay grounds. This exception is without merit.
 
 IV.
 
 21
 Coleman's final argument is that the district court erred in admitting a tape recording that included statements of an alleged coconspirator. The government introduced tape recorded conversations between Potts, his cousin Rico Watts, two unidentified women and "J.C.", whom Potts identified at trial as the defendant, John Coleman. Coleman objects to the statements of Rico Watts in these tape recorded conversations.
 
 
 22
 The district court admitted the recorded statements under F.R.Evid. 801(d)(2)(E), which provides:
 
 
 23
 (d) Statements which are not hearsay. A statement is not hearsay if--
 
 
 24
 (2) Admission by a party opponent. The statement is offered against a party and is ... (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.
 
 
 25
 To admit statements of a co-conspirator under F.R.Evid. 801(d)(2)(E), the trial court must find that the government has demonstrated by a preponderance of the evidence the following two factual prerequisites: (1) that a conspiracy existed involving the declarant and the defendant; and (2) that the statements were made during the course and in furtherance of that conspiracy. Bourjaily v. United States, 483 U.S. 171, 175 (1987). On appeal, the trial court's findings that the government sufficiently demonstrated these factual prerequisites to admissibility is reviewed under the clearly erroneous standard. Id. at 181; Blevins, 960 F.2d at 1255. If the government sufficiently establishes these factual prerequisites, the trial court's decision to admit the evidence is reviewed for an abuse of discretion. Id. at 1255-56.
 
 
 26
 In the present case, the taped conversations include numerous statements about an attempt by Coleman to transport on a U.S. Air flight the suitcase containing in the words of Coleman and Watts "three kees," and the use of Potts' license as identification. (Record at pp. 256, 258, 163.) The conversations also contained repeated exchanges between Potts, Rico Watts and Coleman about attempting to retrieve the suitcase from the U.S. Air baggage claim at the Charlotte Airport. (Record at pp. 256-58, 264-65.) In addition, the independent testimony of Potts demonstrated the existence of a conspiracy between Watts and Coleman as discussed previously. (Record at pp. 187-90.)
 
 
 27
 In sum, the taped conversation between Potts, Rico Watts and Coleman, in conjunction with other independent testimony was sufficient to demonstrate by a preponderance of the evidence: (1) that a conspiracy existed involving Watts and Coleman, and (2) that Watts' statements were made during the course of or in furtherance of that conspiracy. Accordingly, the trial court's finding that the government satisfied the factual prerequisites to admit Watts' statements was not clearly erroneous nor was the court's decision to admit Watts' statements an abuse of discretion. Thus, Coleman's final assignment of error also is without merit.
 
 Accordingly, the judgment appealed from is
 
 28
 AFFIRMED.